IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-00685-RBJ

DAVID HELMER, FELICIA MUFTIC, MICHAEL MUFTIC, CRAIG KANIA, and OLIVER
MARTIN, on behalf of themselves and all others similarly situated,

       Plaintiffs,

v.

THE GOODYEAR TIRE & RUBBER CO., an Ohio corporation,

       Defendant.

---

ORDER

---

       This matter is before the Court on defendant Goodyear Tire & Rubber Co.'s motion to

disqualify counsel [docket #24] and Magistrate Judge Michael E. Hegarty recommendation that

the motion be granted.

       **Facts**

       Entran II is a rubber hose product that is used in hydronic radiant heating and snowmelt

systems.  The hose is used to circulate warm fluid under indoor flooring as an alternative to

conventional heating or under driveways and sidewalks to melt snow and ice.  It was developed

by a company called Dayco and later manufactured by Goodyear.  Goodyear supplied the hose to

Chiles Power Supply Company for use in what are known as Heatway Systems.

       Beginning in the mid-1990s litigation arose alleging that Entran II was defective.

Plaintiffs alleged that the hose would become brittle and crumble, resulting in significant

replacement costs.  Perkins Coie, LLP represented Goodyear in two products liability actions

concerning Entran II, one in the State of Washington and the other in Alaska, beginning in 2003.

This representation was handled by lawyers in Perkins Coie's Seattle and Anchorage offices. Perkins Coie's work on the Entran II cases ended in 2005.  The firm continued to represent Goodyear in other products liability actions, mostly involving allegedly defective tires.

David Black was an attorney of record for plaintiffs in several Entran II cases that were filed in the District of Colorado and elsewhere.  In March 2009, while he was still an attorney of record in Entran II litigation, Mr. Black left his previous law firm and joined Perkins Coie as a partner.  His association with Entran II litigation wrapped up in November 2009.  Because Perkins Coie was still representing Goodyear, albeit not in Entran II litigation, Mr. Black and a colleague who had come to Perkins Coie with him agreed not to perform any work adverse to Goodyear in Entran II cases or otherwise.  There is no indication that they did do.

In March 2010 Mr. Black was approached by attorney Charles LaDuca to see if he wished to participate on behalf of plaintiffs in litigation arising from alleged defects in a newer Goodyear product, Entran 3.  Goodyear had begun manufacturing Entran 3 in 1995.  According to plaintiffs, Goodyear developed Entran 3 because it was dissatisfied with Entran II hose. Goodyear's lawyers themselves have described Entran 3 as an "entirely different hose." Memorandum in support of motion in limine in *Vista Resorts, Inc. v. Goodyear Tire & Rubber Company,* No. 98CV2772 (Arapahoe County, Colorado District Court) [#35-7] at 3.  A gentleman involved in the design of Entran 3 testified in that state court case that Entran 3 was "completely new technology," manufactured using a new process and new materials.  [#35-4] at 108-09.

Entran 3 is, however, rubber hose that is used in the same way and for the same purposes as Entran II.  In the present cases plaintiffs allege, as did plaintiffs in Entran II litigation, that

because of manufacturing and design defects, Entran 3 hose becomes brittle, cracks and leaks, causing significant repair costs.

Mr. Black initially declined Mr. LaDuca's overture, because Goodyear was still a Perkins Coie client. However, in May 2010 Goodyear sued Perkins Coie for alleged malpractice in a tire case. Perkins Coie thereupon terminated its relationship with Goodyear, making Goodyear a former client. Mr. Black and Perkins Coie then reevaluated whether they could represent the plaintiffs in the present case. Concluding that they could do so ethically, Mr. Black contacted Mr. LaDuca and informed him that he could now work on Entran 3 litigation. The representation began on August 30, 2010.

Mr. LaDuca informed Goodyear's internal lawyers that he was working with Mr. Black on possible litigation involving Entran 3 in October 2010. Mr. LaDuca and Mr. Black attended a meeting with Goodyear's representatives in April 2011. Shortly thereafter Goodyear sent a letter to the managing partner of Perkins Coie objecting to its representation of the plaintiffs in any threatened or actual Entran 3 litigation because of its representation of Goodyear in the two Entran II cases. Perkins Coie responded that it disagreed with that objection.

### Procedural History of this Case

Plaintiffs filed their complaint in this case on March 18, 2012. They are represented by Mr. LaDuca, Mr. Black and other lawyers from their firms and one other law firm. It is a purported class action on behalf of all similarly situated owners of radiant heating systems incorporating Entran 3 hose made by Goodyear. Goodyear was served on March 22, 2012 and filed its Answer on April 12, 2012. The Court held a scheduling conference on May 22, 2012 and established a schedule including a hearing on class certification for January 3, 2013 and a two-week jury trial to begin September 23, 2013.

Goodyear filed its motion to disqualify counsel on May 29, 2012.  The Court referred the motion to Magistrate Judge Hegarty and stayed all other proceedings pending resolution of the motion to disqualify counsel.  After full briefing and oral argument, Judge Hegarty issued an order on August 31, 2012, recommending that the motion be granted [# 45].  Plaintiffs filed a timely objection [#46], Goodyear filed a response [#48]; and plaintiff filed a reply [#51].  The Court then vacated the class certification hearing, again pending final resolution of the disqualification matter.

### Standard of Review

A recommendation on a motion that is not dispositive of a claim or defense is reviewed for clear error: "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to the law."  Fed. R. Civ. P. 72(a).  When reviewing non-dispositive motions "district courts review such orders under a 'clearly erroneous or contrary to law' standard of review."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988) (citing 28 U.S.C. § 636(b)(1)(A)).

### Conclusions

Plaintiffs object to Magistrate Judge Hegarty's recommendation on four grounds: (1) he misstated material undisputed facts; (2) he disregarded the applicable legal standard; (3) under the applicable legal standard, Goodyear did not meet its burden of proof; and (4) the magistrate judge improperly declined to deny the motion on the alternative basis of laches.

### A.  Misstatement of Material Facts.

The magistrate judge found that Perkins Coie's representation in Entran II litigation continued until March 2010.  As indicated above, while the firm's representation of Goodyear continued until March 2010, its representation of Goodyear in Entran II litigation ended in 2005.

I therefore agree with the defendant that this factual misunderstanding was clearly erroneous. Even if it influenced Judge Hegarty's thinking, however, it is not material to the issue pending before me. This Court will resolve the disqualification issue based on the corrected facts.

**B.  Legal Standard**

A local rule of the District of Colorado provides, "[e]xcept as otherwise provided by Administrative Order, the Colorado Rules of Professional Responsibility adopted by the Colorado Supreme Court on April 12, 2007, and effective January 1, 2008, are adopted as standards of professional responsibility applicable to this court." D.C.COLO.LCivR 83.4. Plaintiffs argue that the motion to disqualify is therefore governed by Rule 1.9(a) of the Colorado Rules of Professional Conduct which provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person *in the same or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(emphasis added)

To begin with, I agree with Magistrate Judge Hegarty that the Colorado ethical rule does not apply to this motion. This motion concerns whether a lawyer and his law firm will be permitted to represent a client in federal court. Although attorneys are, of course, bound by the local rules of the court, a motion to disqualify counsel in a federal case is a substantive motion that affects the rights of the parties, and as such, it must be decided by applying federal law. *Cole v. Ruidoso Mun. Schools,* 43 F.3d 1373, 1383 (10th Cir. 1994).

In *United States v. Stiger,* 413 F.3d 1185 (10th Cir. 2005), the court applied Rule 1.9 of the ABA Model Rules of Professional Conduct rather than Rule 1.9 of the Oklahoma Rules of

Professional Conduct to a disqualification motion, even though the two versions were identical.[1]

Citing *Cole,* the court in *Stiger* held that the Model Rule "'reflect[s] the national standard to be used in ruling on disqualification motions.'" 413 F.3d at 1195 (citing *Cole,* 43 F.3d at 1383).

> Thus, to disqualify Perkins Coie, the defendant Goodyear
>
> must establish that "(1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant." *Cole,* 43 F.3d at 1383 (citing ABA Model Rule 1.9(a) and (c))  If the movant establishes the first two prongs, an irrebuttable "presumption arises that a client has indeed revealed facts to the attorney that require his disqualification. *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir. 1985).

*Stiger,* 413 F. 3d at 1196 (quoting *Cole;* citations omitted).  That is the legal standard that governs the pending motion to disqualify.

Plaintiffs argue that Magistrate Judge Hegarty failed to give effect to Comment [3] to Rule 1.9 of the Colorado Rules of Professional Conduct, which clarifies the meaning of the term "substantially related."  Comment [3] to the Model Rule is identical.  In pertinent part, Comment [3] provides,

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. . . . Information that has been disclosed to the public or other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related.

Plaintiffs argue that Comment [3], which was not in effect in the Oklahoma or the Colorado rules in 2005 when *Stiger* was decided, should supply the interpretation of "substantially related" now.  If so, they argue, then the Entran II cases should not be deemed to

---

[1] Colorado's Rule 1.9 is also identical.

be "substantially related" to the present case.  Perkins Coie instituted internal procedures to make

sure that any confidential factual information its attorneys obtained from Goodyear in the Entran

II cases would not be used by the plaintiffs in the present case.

I disagree.  Although Comment [3] was not adopted by the Colorado Supreme Court until

April 12, 2007 and did not take effect until January 1, 2008, it has been included in the ABA

Model Rules since 2000.  In adding Comment [3], the ABA acknowledged that the term

"substantially related" had been the subject of considerable discussion.  "[T]his definition and

suggestions about applying it are an effort to be helpful to lawyers in complying with the Rule

and courts in construing it.  No change in substance is intended."  *A Legislative History: The*

*Development of the ABA Model Rules of Professional Conduct 1982-2005,* American Bar

Association (2006) at 233.

Notwithstanding Comment [3], the *Stiger* court held,

[i]n applying the second prong – the "substantial relation" test – we look to
whether "the factual contexts of the two representations are similar or related."
*Smith,* 757 F.2d at 1100 (quotation omitted).  "The underlying question is whether
the lawyer was so involved in the matter that the subsequent representation can be
justly regarded as a changing of sides in the matter in question."  Model Rules of
Prof'l Conduct R. 1.9 cmt.

413 F.3d at 1196.

This tells me two things.  First, the court was well aware of the comments.  It quoted a

sentence from Comment [2].  Second, it did not adopt an approach to "substantially related" that

turned on the risk that confidential information would be misused.  Rather, under *Stiger,* if the

factual context of the two representations are so similar that it can be fairly said that the law firm

has changed sides in the matter, then it will be <u>irrebuttably</u> presumed that the firm "has indeed

revealed facts to the attorney that require his disqualification."  413 F.3d at 1196.

I do not question the integrity or the good intentions of the Perkins Coie law firm. However, Rule 1.9 involves more than a factual inquiry as to whether a "Chinese Wall" will work.  It speaks to a more fundamental duty that a lawyer or law firm owes to its former client. A law firm should not "change sides" and represent a new client against its former client in a matter that is fundamentally similar to that in which the firm defended the former client.

I therefore conclude that Magistrate Judge Hegarty did apply the correct legal standard.  I therefore turn to whether the facts of this case mandate disqualification under that standard.

## C. **Did Goodyear Meet its Burden (Was Magistrate Judge Hegarty's Application of the Facts "Clearly Erroneous")?**

Notwithstanding the similarity of the names, Entran II and Entran 3 are not the same.  As indicated above, Goodyear's lawyers, hoping to prevent Entran 3 from being sullied by the alleged failures of Entran II, have told at least one court that the two products are entirely different.  Entran 3's product designer likewise testified in the state court that Entran 3 is the product of a completely new process that uses completely new materials.

Nevertheless, Magistrate Judge Hegarty found that both products consist of "a hose, orange in color and made of rubber, designed to carry heated fluid for use in radiant heating or snowmelt systems, sold and distributed by the same company.  The alleged nature of the failure of both hoses is the same – the material degrades and falls apart, requiring replacement at great cost by the homeowner."  Recommendation [#45] at 6.  As discussed below in the context of the laches issue, Goodyear's General Counsel has stated, and it does not appear to be disputed, that at a meeting in Akron, Ohio on April 8, 2010 Mr. Black told Goodyear that Entran 3 has the same deficiencies as Entran II and offered in support the same people who served as experts in Entran II litigation.  One can also find support for the similarities on which Judge Hegarty relied

by comparing the facts described in *AE, Inc. v. Goodyear Tire & Rubber Co,* 576 F.3d 1050, 1053 (10th Cir. 2009), *Malek v. Goodyear Tire & Rubber Co.,* 160 F. App'x 702 (10th Cir. 2005)(not published in the Federal Reporter), and other reported Entran II cases with the facts alleged in the present case.  Complaint [#1] at ¶¶ 2-4, 16, 22-23.

The issue is not whether the two products themselves were identical; obviously, they were not.  To go back to *Stiger,* the issues are whether "the factual contexts of the two representations are similar or related," and whether Perkins Coie's representation of the plaintiffs in the present case can be justly regarded as a changing of sides in the matter in question."  413 F.3d at 1196.

Judge Hegarty was not unaware that there are differences between the two products.  He found, however, that even accepting plaintiff's argument regarding the different composition of the two products as true, "the substantial relationship question is, in my opinion, not even close." Recommendation [#45] at 7.  The factual contexts of the two representations are certainly related.  The function of the products and the alleged defects in the products are substantially the same.  As for changing sides, Perkins Coie understandably bristled at the misimpression that they changed sides while still representing Goodyear.  The fact remains, however, that the law firm that defended Goodyear and its Entran II product against claims of design and manufacturing defects now wishes to represent a nationwide class of persons who contend that Goodyear's successor product, Entran 3, has the same types of problems and is similarly defective in its manufacture and design.  On balance, I cannot find that Magistrate Judge Hegarty's findings and applications of the facts was clearly erroneous.

### D.  <u>Laches</u>

Laches is an equitable defense that precludes relief when a party's "inexcusable delay" in enforcing his rights causes prejudice to the opposing party.  *See, e.g., Potash Co. of America v. International Minerals & Chemical Corp.,* 213 F.2d 153, 154 (10th Cir. 1954).  Magistrate Judge Hegarty concluded that laches does not preclude Goodyear's motion to disqualify counsel.

As indicated above Mr. Black informed Mr. LaDuca in September 2010 that he could participate in Entran 3 litigation.  Mr. LaDuca states that he notified Goodyear of Mr. Black's involvement with him in possible Entran 3 litigation on October 6, 2010.  LaDuca Affidavit [#35-16] ¶9.  On April 8, 2011 lawyers for Goodyear met with Mr. LaDuca, Mr. Black and others in Akron, Ohio during which the LaDuca team made a presentation concerning Entran 3.

According to a letter from Goodyear's Vice President and General Counsel, David L. Bialosky to Robert E. Giles, Managing Partner of Perkins Coie, dated April 15, 2011 [#24-6], Mr. Black claimed during the April 8, 2011 meeting that there were "virtually identical deficiencies in Goodyear's development and testing of Entran II and Entran 3, and identical problems with their use in hydronic heating systems."  *Id.* at 2.  He supported these claims with opinions from two experts who had been involved in Entran II litigation and who based their opinions on many years of work and testing of Entran II.  *Id.*  Mr. Bialosky wrote that "there can be no doubt that the threatened product liability claims against Goodyear based upon alleged failures in the development and testing of Entran 3 are substantially related to the essentially identical claims which were asserted by Mr. Black and others with respect to Goodyear's predecessor product, Entran II."  *Id.*  Accordingly, he advised that Goodyear would view any threatened or actual litigation involving Entran 3 to be a "serious conflict of interest" for Perkins

Coie, and he demanded that Perkins Coie refrain from any involvement in either threatened or actual litigation over Entran 3. *Id.* at 1, 5.

Mr. Giles responded on June 27, 2011, expressing his disagreement that either the facts or the law required disqualification of Perkins Coie. [#24-7]. According to the plaintiffs, there was no response to Mr. Giles' letter. As indicated above, plaintiffs, represented by Mr. Black and other Perkins Coie lawyers, as well as by lawyers from other firms, filed the present case on March 19, 2012. Goodyear was served on March 22, 2012 and filed an Answer on April 12, 2012. Goodyear then filed the pending motion to disqualify on May 29, 2012.

Plaintiffs contend that this was too late. Magistrate Hegarty commented that he did not think a common law defense of laches would override the irrebuttable presumption articulated in *Stiger.* Recommendation [#45] at 9. In any event, he concluded that a motion filed two months after the case was filed and 45 days after Goodyear filed its Answer was not unduly delayed, and that it should not have come as a surprise, because Goodyear notified plaintiffs of its position in April 2011. *Id.* at 10.

Laches bars a claim when two things are true. First, there must be some unreasonable, even "inexcusable," delay. Mr. Bialosky's letter of April 15, 2011 advised Perkins Coie that it would consider any further involvement in threatened or actual litigation to be a conflict of interest. Goodyear had no forum to seek disqualification before litigation was commenced. Reasonable minds can perhaps differ as to whether two month delay before the motion to disqualify was filed was reasonable. However, a motion to disqualify counsel is not something that should ever be taken lightly. Defense counsel conferred with plaintiffs' counsel, as our local rules require. The defendant then filed a 24-page motion supported by eight exhibits and numerous citations of authority. This was filed one week after the parties participated in the

initial scheduling conference in the case.  The development of the case was just getting started at that point.  *See* Scheduling Order [#27] at 10-13.  It is hard to quarrel with the magistrate judge's implicit finding that the "delay" was not so unreasonable as to support a laches defense in the circumstances.

Second, laches requires a showing that the opposing party has been prejudiced.  I do not underestimate the impact that disqualifying parties' chosen counsel can potentially have on them. In this case one obvious benefit to the plaintiffs of being represented by Mr. Black is that he participated in Entran II litigation against Goodyear in this district and presumably developed useful knowledge and expertise in such litigation.  *See, e.g., AE, Inc.,* 576 F.3d 1050; *Malek,* 160 F. App'x 702; *Bloom v. Goodyear Tire & Rubber Co.,* No. 05CV1317, 2006 WL 2331135 (D. Colo. August 10, 2006).  If Mr. Black had not joined the law firm that formerly defended Goodyear in Entran II litigation, Goodyear would have nothing to complain about.  But, he did join that firm.  Plaintiffs knew what Goodyear's position was, and they knew or should have known that they may well face a motion to disqualify Perkins Coie when they filed the case.  The facts do not support a finding that plaintiffs were unfairly prejudiced by the timing of the filing of the motion.

**Order**

"While the power to disqualify an attorney from a case 'is one which ought to be exercised with great caution,' it is 'incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession.'  *United States v. Collins*, 920 F.2d 619, 634 (10th Cir. 1990) (quoting *Ex Parte Burr,* 22 U.S. 529, 529-30, 6 (1824)).  This Court concludes that Magistrate Judge Hegarty exercised such caution, and that his recommendation was neither clearly erroneous on the facts nor contrary to law.  Accordingly, the court

APPROVES and ADOPTS the recommendation of the magistrate judge [#45].  Defendant's

motion to disqualify counsel [#24] is GRANTED.

DATED this 29th day of January, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge