# IN THE UNITED STATES DISTRICT COURT
# FOR THE COLORADO

Civil Action No. 1:12-cv-00685-RBJ-MEH

DAVID HELMER, FELICIA MUFTIC, MICHAEL MUFTIC, CRAIG KANIA,
OLIVER MARTIN, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

THE GOODYEAR TIRE & RUBBER CO., an Ohio Corporation,

      Defendant.

---

## AMENDED CLASS ACTION COMPLAINT

---

      Mr. David Helmer, Dr. Michael Muftic, Ms. Felicia Muftic, Mr. Craig Kania and Mr. Oliver Martin ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, by their undersigned attorneys, allege upon personal knowledge as to themselves, and upon information and belief (based upon investigation of counsel) as to all other matters, as to which allegations Plaintiffs believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

### INTRODUCTION

      1.      Plaintiffs bring this class action on behalf of themselves and all other similarly situated owners of radiant heating systems incorporating Entran 3 radiant heating hoses ("Entran 3"), made by Goodyear Tire and Rubber Company ("Goodyear" or "Defendant").

      2.      Entran 3 is a special purpose hose that Goodyear designed, manufactured, tested, marketed, and sold specifically for use in hydronic in-floor radiant heating and snowmelt

systems.  In these hydronic radiant heating and snowmelt systems, hose, tube, or pipe is permanently affixed under flooring or embedded in concrete and acts as a conduit for fluid that is heated and circulated through the hose, tube, or pipe to the floor, which, in turn, radiates heat to the structure.  In a snowmelt system, the hose, tube, or pipe is embedded in driveways, walkways, stairs, parking lots, roofs, or even football fields to melt the snow.

3.      From 1992 until approximately the summer of 1996, when Goodyear ceased production of the products, Goodyear manufactured and sold over fifty million linear feet of Entran 3 hose.  Entran 3 hose was resold through Chiles Power Supply, Inc., d/b/a Heatway Radiant Floors and Snowmelting ("Heatway"), who sold it for use in radiant heating and snowmelt systems in properties throughout the United States, including in Plaintiffs' homes.

4.      Entran 3 hose is defective.  It is defective because of the materials that Goodyear chose for the elements of the hose and the process by which Goodyear made it.  Portions of the hose, which Goodyear specifically designed to conduct heating fluids, become hard and brittle over time, crack, may have or develop holes, and may leak and/or burst releasing the heated fluids and causing catastrophic property damage.  As a result the hose must be removed from the structure of the home at substantial cost to the homeowner /consumer, and replaced with a conduit which can reliably conduct such heating fluids.

5.      Upon information and belief, the Entran 3 hose is further defective as a result of quality control issues in Goodyear's manufacturing plants including, but not limited to, improper manufacture of the elements of the hose leading to non-uniformity of those elements and even breaks in the polyethylene vinyl alcohol ("EVOH") plastic oxygen barrier layer that occurred before such hose left the manufacturing plant.

6.      Plaintiffs are or were owners of homes in which radiant heating or snowmelt systems incorporating Goodyear's defective Entran 3 hoses were installed.

7.      Goodyear knew, or should have known, before and while it was selling Entran 3, that Entran 3 was defective and not fit for use in such systems.

8.      Goodyear is responsible and liable for, among other things, the direct and incidental costs of removing and replacing all of the Entran 3 hose installed in Plaintiffs' homes, buildings, and other structures, and any consequential damages caused as a result of defective Entran 3 hose.

## PARTIES

9.      Plaintiff David A. Helmer is a resident of the State of Colorado.  He owns a home in Keystone, Colorado that is the subject of this Complaint.

10.      Plaintiffs Dr. Michael Muftic and Ms. Felicia Muftic are residents of the State of Colorado.  The Muftics own a home in Fraser, Colorado that is the subject of this Complaint.

11.      Plaintiffs Craig Kania and Oliver Martin are residents of the State of Wisconsin. They formerly owned a home in Crivitz, Wisconsin that is the subject of this Complaint.

12.      Defendant Goodyear Tire and Rubber Co. ("Goodyear") is an Ohio corporation with its principal place of business in Akron, Ohio.  Goodyear is authorized and licensed to transact business in the State of Colorado.  Goodyear, at all times relevant hereto, was engaged in the design, manufacture, marketing and sale of the Entran 3 hose that has been installed in numerous homes, buildings, and other structures in the states of Colorado and Wisconsin, and in other homes and structures throughout the United States.

-3-

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and the

Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) (2).  The matter in controversy in this

class action exceeds $5,000,000, exclusive of interest and costs, and some members of the class

are citizens of states other than the states in which Defendant is incorporated and has its primary

place of business.

14.     Goodyear transacts business and has offices in this District.

15.     Venue is proper pursuant to 28 U.S.C. §1391(a) because: 1) a substantial part of

the events giving rise to this action occurred in this District; and 2) a substantial part of the

property that is the subject of this action is located in this District.

## FACTUAL BACKGROUND

16.     At issue in this case is hose manufactured by Goodyear—Entran 3—for hydronic

radiant heating systems.  The systems circulate warm fluid under indoor flooring as an

alternative to conventional heating systems or under driveways and sidewalks to melt snow and

ice.  Goodyear designed, developed, formulated, tested, manufactured, and sold Entran 3 hose

for use in radiant heating systems.

17.     Goodyear created Entran 3 hose at the request of Heatway.  Heatway provided

Goodyear with extensive information and literature regarding the requirements and intended uses

for the Entran 3 hose, including, but not limited to, that the main requirement was that the hose

"be built to last indefinitely," that "[l]ongevity is our greatest concern," that the hose needed to

be resistant to hydrocarbons and chemicals that came into contact with the hose, that the pressure

rating should be 100 to 200 PSI continuous service, that the hose must be able to perform at 200°F continuous service and withstand temperatures up to 300°F, that quality control was essential and that the hose needed to be oxygen resistant.  Heatway has filed for and received bankruptcy protection and is not named as a Party to this action.

18.     Goodyear designed, formulated, tested, manufactured, and supplied Entran 3 hose for use in Heatway's hydronic radiant heating and snowmelting systems, provided technical data regarding such hose and its performance with the systems, tested the Entran 3 hose as manufactured and used in these systems, and participated in the marketing and sale of Entran 3 products and these systems, including paying for a portion of such marketing costs.  Goodyear also reviewed and approved Heatway's promotional literature regarding Entran 3 for technical accuracy, including the lifetime warranty for residential uses of the hose which Heatway issued to consumers, such as Plaintiffs, and featured in its marketing materials.  Through such activity, Goodyear substantially participated in the integration of Entran 3 hose into hydronic radiant heating and snowmelting systems.

19.     Goodyear designed Entran 3 by bonding a layer of EVOH co-polymer, which is a stiff, plastic-like material that is supposed to serve as an oxygen barrier, against layers of rubber and reinforcing yarn.

20.     Other types of plastic and rubber across the country in radiant heating systems have not exhibited the problems that Goodyear's Entran 3 hose has exhibited.

21.     Goodyear had full knowledge of the potential liabilities accompanying the design, manufacture, and sale of Entran 3 hose.

22.     Problems began arising after Goodyear's Entran 3 hose was installed in radiant heating systems across the country.  Under normal and reasonably expected use conditions, Goodyear's Entran 3 hose has shown a variety of problems, including leaks in the hose both at and away from the manifolds; the inner layer of the hose becoming hard, brittle and cracking, or developing holes after use; and the hose breaking in the middle of loops causing water damage to personal property in the home itself.  The material that leaks from Entran 3 hoses not only damages the hose itself, but also other parts of the radiant heating system and the floors, walls, ceilings, and other structural support of the consumer's home.

23.     Entran 3 hose becomes "crispy" and "crunchy" after use.  Examination of such crispy and crunchy hose has revealed that the inner layer of the hose has hardened and embrittled and that cracks have developed in that layer which radiate through other layers of the hose, leading to leaking at connections and even splitting of the hose mid-loop and resultant damage to the home and its contents.

24.     Upon information and belief, customers started complaining to Goodyear about problems with the hose after it was sold across the country.  Goodyear denied there were any problems with the hose or failed to confirm the nature of the problems that it knew existed with the hose that it designed and made

25.     Goodyear should have or could have reasonably expected that Plaintiffs would be adversely affected by defective Entran 3 hose as a result of their using Entran 3 hose in a foreseeable way in their radiant heating systems.

26.     The Plaintiffs' experiences, as discussed below, show that Entran 3 hose that Goodyear designed, manufactured, and sold was defective in design and manufacture.  Further,

Goodyear failed to take reasonable steps to insure that Entran 3 hose was fit for its known and foreseeable use.

27.     Entran 3 hose has harmed and continues to harm the homes, buildings, and other structures in which it is installed in Colorado, Wisconsin and throughout the United States.  At bottom, Entran 3 was not properly validated for its intended life cycle.

28.     Colorado was a major market for radiant heating systems using Entran 3 hose.

29.     Goodyear failed to properly design, test, and manufacture Entran 3 hose that reached the consuming public, including Plaintiffs, without substantial change or alteration and without warning of defects in Entran 3 hose or heating systems containing Entran 3 hose.

30.     Upon information and belief, Goodyear became aware of these problems with its Entran 3 hose but did not provide a warning with the Entran 3 hose or otherwise warn consumers of the problems or dangers with its product.  In fact, to this day, Goodyear has concealed its knowledge of the defects and the potential defects in its Entran 3 hose from the public, but instead placed information about Entran 3 on its website with the intention that homeowners and installers would view and rely on the website, indicating that hardening and leaks were the result of improper system design, installation, or maintenance rather than an inherent problem with Entran 3.

31.     Goodyear never informed Plaintiffs or other consumers of Entran 3 hose and hydronic radiant heating systems utilizing Entran 3 hose of the defective nature of Entran 3 hose and systems containing such hose and the resultant inability of such products to last for the periods for which they would reasonably be expected to last, that is, for the expected life of the home in which they were installed.

32.   To this day, Goodyear has not recalled Entran 3 hose.

## ALLEGATIONS PERTAINING TO PLAINTIFFS' HOMES

33.   Plaintiff David Helmer built and owns a home in Keystone, Colorado that contains Entran 3 hose throughout the home as part of a radiant heating system heating the home. The Entran 3 hose in Helmer's home has become crispy, leaked, and failed, necessitating the replacement of a boiler and other equipment and requiring removal of the hose, causing Mr. Helmer thousands of dollars in damages.

34.   Plaintiffs Dr. Michael and Felicia Muftic built and own a home in Fraser, Colorado that contains Entran 3 hose throughout the home as part of a radiant heating system heating the home.  Entran 3 hose in the Muftics' home is defective and has failed.  The Entran 3 hose in the Muftic home has become crispy, leaked and failed.  In June 2010, an Entran 3 hose in the Muftic home burst while the Muftics were away, flooding the Muftic home catastrophically and causing thousands of dollars in damage to the home and its contents.

35.   Plaintiffs Craig Kania and Oliver Martin owned a home in Crivitz, Wisconsin that contains Entran 3 hose as part of a radiant heating system.  The Entran 3 hose in Kania's and Martin's home was defective and failed.  Mr. Kania and Mr. Martin discovered the defective condition of the Entran 3 hose in 2010 and its defective condition necessitated its removal.  As a result of the problems with the system, Mr. Kania and Mr. Martin spent thousands of dollars on repairs and had a baseboard heating system installed in place of the Entran 3 hose.

36.   The Entran 3 hoses in Plaintiffs' properties are defective products which are unreasonably dangerous to Plaintiffs and their properties because the Entran 3 hoses are deteriorating and degrading at such an accelerated rate that they are causing leaks and blockage

and damages not only to the Entran 3 hoses, but also to mechanical parts of heating and snow melting systems, such as pumps, valves, expansion tanks, boilers and connections, and an overall failure of the entire radiant heating and snowmelt systems.

37.     The Entran 3 hoses still in use will continue to deteriorate and degrade and, unless these systems are replaced in their entirety, Plaintiffs' hydronic radiant heating and snowmelt systems will continue to fail, resulting in damage to Plaintiffs' homes and other personal property.

38.     Plaintiffs have incurred damages in the amount of the cost of the full replacement of the defective Entran 3 hose, other necessary repairs to the heating systems, damages relating to destruction of personal property, related damages and repairs to the homes resulting from the repair and replacement process, and consequential damages, including loss of use of the homes while the heating systems are replaced and diminution in the value of the homes.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

39.     Goodyear knew that Entran 3 hose was defective prior to the time of its sale of the hose, and intentionally concealed material information and the truth concerning its product from Plaintiffs and the general public, while continually marketing Entran 3 hose.  Goodyear's acts of fraudulent concealment include failing to disclose that Entran 3 hose was defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage.

40.     Because the defects in the Entran 3 hose are latent and not detectable until manifestation, and due to the locations in homes where Entran 3 hose is foreseeably placed and hidden from view, defects are difficult to detect.  Plaintiffs and the Class members were not reasonably able to discover the Entran 3 hose was defective and unreliable until recently, despite

their exercise of due diligence.

41.    Plaintiffs had no reasonable way to discover this defect until shortly before Plaintiffs filed their original complaints.

42.    Goodyear had a duty to disclose that its Entran 3 hose was defective, unreliable and inherently flawed in its design and/or manufacture and would fail within its expected period of use, resulting in significant damages and eventually catastrophic leaks.

## CLASS ACTION ALLEGATIONS

43.    Plaintiffs seek to bring this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated.  The first proposed Class is defined as:

> All persons, trusts corporations, partnerships, associations, and/ or entities in the United States that own or owned real property in which Entran 3 hose has been installed.  Excluded from the Class are Goodyear, any entity in which Goodyear has a controlling interest or which has a controlling interest of Goodyear, and Goodyear's legal representatives, assigns and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

44.    Alternatively to the Nationwide Class claims, Plaintiffs assert, under Federal Rule of Civil Procedure 23, a State of Colorado Class, and a State of Wisconsin Class defined as:

> Colorado Class:
>
> All persons, trusts corporations, partnerships, associations, and/ or entities in the State of Colorado that own or owned real property in which Entran 3 hose has been installed.  Excluded from the Class are Goodyear, any entity in which Goodyear has a controlling interest or which has a controlling interest of Goodyear, and Goodyear's legal representatives, assigns and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Wisconsin Class:

All persons, trusts corporations, partnerships, associations, and/ or entities in the State of Wisconsin that own or owned real property in which Entran 3 hose has been installed. Excluded from the Class are Goodyear, any entity in which Goodyear has a controlling interest or which has a controlling interest of Goodyear, and Goodyear's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

45.     The classes described in this Complaint will be jointly referred to as "Class."

46.     Plaintiffs reserve the right to amend or alter the above Classes.

**Numerosity**

47.     The use of Goodyear's Entran 3 has damaged and continues to damage a vast number of persons and entities that own homes, apartments, office buildings and other structures in which Entran 3 is installed, in Colorado, Wisconsin and throughout the United States. The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown as such information is in the exclusive control of Defendant. However, given the widespread use of Entran 3 hose in the United States, and the size and reach of Goodyear's operations, Plaintiffs believe the Class consists of thousands of consumers statewide and nationwide, making joinder of Class members impracticable.

**Commonality and Predominance**

48.     The claims of Plaintiffs and the Class members rely upon common questions of law and fact. Plaintiffs and all Class members are also entitled to a common form of relief, namely damages.

49.     The harm that Goodyear's Entran 3 has caused, is causing, and will cause is substantially uniform with respect to all Class members.  Common questions of law and fact that affect the class members include but are not limited to:

a.      Whether Goodyear has sold a defectively designed product;

b.      Whether Goodyear has failed to prevent damages caused by the defective product they designed, manufactured and sold into the stream of commerce;

c.      Whether Goodyear has failed to warn consumers about the reasonably foreseeable dangers of using Entran 3;

d.      Whether Goodyear has breached an implied warranty of merchantability;

e.      Whether Goodyear has breached the warranty of fitness for a particular purpose;

f.      Whether Goodyear acted negligently;

g.      Whether Goodyear was unjustly enriched by the sale of the defective Entran 3;

h.      Whether Goodyear's conduct should be enjoined; and

i.      Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

50.     These common questions of law and fact predominate over any individual questions that may exist or arise.

**Typicality**

51.     Plaintiffs' claims are typical of absent Class members' claims.  All claims arise from the same factual background and legal theories.  Plaintiffs and all members of the Class sustained damages arising out of Goodyear's wrongful course of conduct.  The harms suffered by Plaintiffs are typical of the harms suffered by the members of the Class, and Plaintiffs and

other members of the Class have an interest in preventing Goodyear from engaging in such activity in the future.

**Adequacy of Representation**

52.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel competent and experienced in class action and product liability litigation and have no conflict of interest with other Class members in the maintenance of this class action.  Plaintiffs have no relationship with Goodyear except as consumers who purchased Goodyear's products.  Plaintiffs will vigorously pursue the claims of the Class.

**Superiority**

53.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable.  Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class to individually seek redress for the wrongs done to them.  Plaintiffs believe that Class members, to the extent they are aware of their rights against Goodyear herein, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages, and that a class action is the only feasible means of recovery for the Class members.  Individual actions also would present a substantial risk of inconsistent decisions, even though each Class member has an identical claim of right against Goodyear.

**Manageability**

54.     Plaintiffs envision no difficulty in the management of this action as a class action. The advantages of maintaining the action as a class action far outweigh the expense and waste of

judicial effort that would result from hundreds or thousands of separate adjudications of these issues for each member of the Class or the injustice that would result if individual actions could not be brought due to lack of notice or resources.

55.    Through the actions and omissions described herein, Goodyear has acted or failed to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is proper as to the class as a whole.

56.    Class treatment further ensures uniformity and consistency in results and will provide optimum compensation to members of the Class for their injuries.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Strict Liability – Design Defect)

57.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

58.    Goodyear designed the Entran 3 hose used in the hydronic radiant heating and/or snowmelting systems installed at the Plaintiffs' homes.

59.    The design of the Entran 3 hose, including the formulation of the material making up the hose, was defective and, because of such design defects, the Entran 3 hose was unreasonably dangerous to the consuming public, including the Plaintiffs.  The Entran 3 hose posed a substantial likelihood of harm at the time it was sold.

60.    The defect in Goodyear's design of the Entran 3 hose existed at the time the Entran 3 hose was sold and/or when the hose left Goodyear's possession or control.

61.    The risks inherent in the design of Goodyear's Entran 3 hose outweigh the benefits of its design.

62.     Upon information and belief, feasible alternatives existed to make the Entran 3 hose safer for its intended use at the time of its design.

63.     Entran 3 hose was expected to be and was installed in consumers' homes, including Plaintiffs' homes, without substantial change in its condition from the time of its manufacture or sale.

64.     Goodyear is strictly liable for the injuries that the defective Entran 3 hose has caused the Plaintiffs.

65.     The injuries caused to Plaintiffs as a result of the defective Entran 3 hose could and should have been reasonably foreseen by Goodyear.

66.     As a proximate result of the defective Entran 3 hose, Plaintiffs have incurred and will incur damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Strict Liability – Manufacturing Defect)

67.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

68.     Goodyear manufactured the Entran 3 hose used in the hydronic radiant heating and/or snowmelting systems installed at the Plaintiffs' homes.

69.     When the Entran 3 hose left Goodyear's control, it deviated in a material way from its design and/or performance standards.  As a result, the Entran 3 hose was unreasonably dangerous to the consuming public, including the Plaintiffs.

70.     The Entran 3 hose was defectively manufactured and posed a substantial likelihood of harm at the time it was sold and/or when the hose left Goodyear's possession or control.

71.     Entran 3 hose was expected to be and was installed in consumers' homes, including Plaintiffs' homes, without substantial change in its condition from the time of its manufacture or sale.

72.     Goodyear is strictly liable for the injuries that the defective Entran 3 hose has caused the Plaintiffs.

73.     The injuries caused to Plaintiffs as a result of the defective Entran 3 hose could and should have been reasonably foreseen by Goodyear.

74.     As a proximate result of Goodyear's defective manufacture of the Entran 3 hose, Plaintiffs have incurred and will incur damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**(Strict Liability – Failure to Warn)**

75.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

76.     Goodyear designed and manufactured the Entran 3 hose used in the hydronic radiant heating and snowmelting systems installed at the Plaintiffs' homes.

77.     When the Plaintiffs bought the Entran 3 hose, they were not aware of the dangerous and destructive nature of the hose and Goodyear knew or had reason to know that those consumers would not realize the dangerous condition of the Entran 3 hose.

78.     Goodyear did not provide, and the Entran 3 hose did not contain, adequate warnings and, as a result, it was unreasonably dangerous to the consuming public, including the Plaintiffs.

79.     The defect in Goodyear's Entran 3 hose, including the lack of warnings, existed at the time the Entran 3 hose was sold and/or when the hose left Goodyear's possession or control.

80.     Entran 3 hose was expected to be and was installed in consumers' homes, including Plaintiffs' homes, without substantial change in its condition from the time of its manufacture or sale.

81.     Goodyear is strictly liable for the injuries that its defective Entran 3 hose and its lack of warnings have caused the Plaintiffs.  Such harm would not have been suffered if Goodyear had provided adequate warnings or instructions.

82.     The injuries caused to Plaintiffs as a result of the defective Entran 3 hose could and should have been reasonably foreseen by Goodyear.

83.     As a proximate result of Goodyear's failure to give adequate warnings or instructions regarding any reasonably foreseeable problems, Plaintiffs have incurred and will incur damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Negligence)

84.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

85.     Goodyear designed, developed, formulated, tested, and manufactured Entran 3 hose for use in radiant heating systems.

86.     Goodyear's Entran 3 hose is unreasonably dangerous when used in radiant heating systems.

87.     Goodyear owed a duty to the consuming public to design, develop, formulate, test, and manufacture a product reasonably free of defect.  Goodyear further had a duty not to put defective and dangerous products such as its Entran 3 hose on the market.

88.     At the time Goodyear was selling the Entran 3 hose, Goodyear was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its Entran 3 hose in radiant heating systems.

89.     Goodyear was negligent and breached its duty to the consuming public, including the Plaintiffs, by designing, developing, formulating, testing, and manufacturing Entran 3 hose that, under ordinary use in hydronic radiant heating and snowmelting systems, is subject to deterioration, embrittlement, cracking, leakage, catastrophic breaking and is otherwise defective.

90.     The injuries sustained by Plaintiffs could have been reasonably foreseen by Goodyear.

91.     As a direct and proximate result of Goodyear's negligent acts and/or omissions, each of the Plaintiffs has incurred and will incur damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Negligent Failure to Warn)

92.     Plaintiffs reallege and incorporate by reference each of the paragraphs above.

93.     Goodyear owed a duty to the consuming public to design, develop, formulate, test, and manufacture a product reasonably free of defect.

94.     Goodyear had a duty to disclose to the consuming public the foreseeable risks associated with the use of its Entran 3 hose in radiant heating systems.

95.     At the time Goodyear was selling the Entran 3 hose, Goodyear was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its Entran 3 hose in radiant heating systems.

96.     Goodyear was negligent in that it knew or in the exercise of reasonable care should have known that Entran 3 hose under ordinary use in hydronic radiant heating and

snowmelting systems might be harmful or injurious to the consuming public, including the Plaintiffs, but failed to use reasonable care to warn each of the Plaintiffs and the consuming public of the potentially harmful and injurious effects in the manner that a reasonable person would under the same or similar circumstances.

97.     Goodyear failed to exercise reasonable care and give adequate warnings or instructions to consumers about the reasonably foreseeable dangers that could result from using the Entran 3 hose under reasonably foreseeable conditions.

98.     Consumers using radiant heating systems with the Entran 3 hose were not aware of the dangerous nature of the Entran 3 hose.

99.     When the Plaintiffs bought the Entran 3 hose, they were not aware of the dangerous and destructive nature of the hose and Goodyear knew or had reason to know that those consumers would not realize the dangerous condition of the Entran 3 hose.

100.    Due to Goodyear's failure to provide consumers with adequate warnings or instruction about the dangerous and destructive nature of the Entran 3 hose, Plaintiffs have been harmed.  Such harm would not have been suffered if Goodyear provided adequate warnings or instructions.

101.    As a direct and proximate result of Goodyear's negligent acts and/or omissions, each of the Plaintiffs has incurred and will incur damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### (Breach of the Implied Warranty of Merchantability)

102.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

103.     Goodyear designed, manufactured, and sold the Entran 3 hose knowing that it would be installed in the radiant heating systems in homes, offices, and other structures owned by the Plaintiffs.

104.     Goodyear was a merchant of the Entran 3 hose and substantially assisted Heatway in marketing, promoting, and selling the Entran 3 hose to the consuming public.

105.     Goodyear expected the consuming public, including Plaintiffs, to use the Entran 3 hose in their radiant heating systems and such use was reasonably foreseeable.  The Entran 3 hose sold by Goodyear was not merchantable at the time Goodyear sold it.

106.     Goodyear warranted to the Plaintiffs that Entran 3 hose and the radiant heating systems of which it was a part were of a quality that would pass without objection in the trade and was at least fit for the ordinary purposes for which such goods were used, and in all other respects was of merchantable quality.

107.     Plaintiffs relied on that warranty.

108.     Goodyear breached its implied warranty of merchantability because Entran 3 was not of merchantable quality, leaked and prematurely failed, and was unfit for the ordinary radiant heating purposes for which it was designed and was used.

109.     Given where Entran 3 hose was placed -- permanently affixed under flooring or embedded in concrete -- any limitation of remedies claimed by Goodyear must fail of its essential purpose in that if the Entran 3 fails, significant damage to property will occur and the replacement of the failed Entran 3 and the repairs necessitated by the leaks cannot be accomplished without considerable consequential cost and expense.

110.    Goodyear has been notified of the defective nature of its Entran 3 hose and of its breach of warranty within a reasonable time of its discovery.

111.    As a direct and proximate result of Goodyear's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Breach of the Implied Warranty of Fitness for a Particular Purpose)

112.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

113.    Goodyear designed, manufactured, and sold the Entran 3 hose knowing that it would be installed in radiant heating systems in the homes, offices, and other structures owned by Plaintiffs.

114.    Goodyear substantially assisted Heatway in the marketing, promoting, and selling of the Entran 3 hose in radiant heating systems.

115.    Goodyear knew that the Entran 3 hose it designed, manufactured, and created was to be used by Plaintiffs and other consumers in radiant heating systems.

116.    Plaintiffs relied on Goodyear's skill and/or judgment to furnish the Entran 3 hose for use in the radiant heating systems in the homes, offices, and other structures which they owned.

117.    Goodyear impliedly warranted that radiant heating systems using Entran 3 hose would be fit for the particular purpose of providing radiant heat in the homes, offices, and structures owned by Plaintiffs.

118.    The Entran 3 hose was not fit for the particular purpose for which it was intended and leaked and failed prematurely when used in radiant heating systems.

119.    Goodyear was properly notified of the defective nature of its Entran 3 hose and of its breach of an implied warranty of fitness for a particular purpose within a reasonable time of its discovery.

120.    Given where Entran 3 hose was placed -- permanently affixed under flooring or embedded in concrete -- any limitation of remedies claimed by Goodyear must fail of its essential purpose in that if the Entran 3 fails, significant damage to property will occur and the replacement of the failed Entran 3 and the repairs necessitated by the leaks cannot be accomplished without considerable consequential cost and expense.

121.    As a direct and proximate result of Goodyear's breach of implied warranty of fitness for a particular purpose, Plaintiffs have been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

122.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

123.    As a result of the wrongful conduct alleged herein, Goodyear received a benefit—profits from the sale of defective Entran 3 hoses—at Plaintiffs' expense.

124.    Under the circumstances as described herein, it would be unjust for Goodyear to retain the benefits it received at Plaintiffs' expense.

## NINTH CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

125.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

126.    Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

    a.   All Goodyear's Entran 3 hoses have defects which cause them to fail and leak, resulting in damage to property and the necessity of the removal and replacement;

    b.   All Goodyear's Entran 3 hoses have defects in workmanship and material that cause failures;

    c.   Goodyear knew of the defects in its Entran 3 hose and that the limitations contained in the warranties accompanying the hose are unenforceable;

    d.   Goodyear will re-audit and reassess all prior warranty claims on its Entran 3 hoses, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

    e.   Goodyear shall establish an inspection program and protocol to be communicated to Class members, which will require Goodyear to inspect, upon request, a Class member's structure to determine whether an Entran 3 hose failure is manifest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered upon Goodyear as follows:

1.       For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

2.       For restitution;

3.       For actual damages sustained;

4.       For damages as otherwise applicable;

5.        For injunctive and declaratory relief, as claimed herein;

6.        For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

7.        For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 4th day of October, 2013        Respectfully submitted,

**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**

By:  */s/ Rick D. Bailey*
        Seth A. Katz
        skatz@burgsimpson.com
        David K. Teselle
        dteselle@burgsimpson.com
        Rick D. Bailey
        rbailey@burgsimpson.com
        Meghan Quinlivan
        mquinlivan@burgsimpson.com
        40 Inverness Drive East
        Englewood, CO 80112
        Telephone: 303-792-5595
        Fax: 303-708-0527

**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca
charlesl@cuneolaw.com
Alexandra Warren
awarren@cuneolaw.com
William Anderson
wanderson@cuneolaw.com
507 C Street, NE
Washington, DC 20002
Telephone:  202.789.3960
Facsimile:  202.789.1819

CUNEO GILBERT & LADUCA, LLP
Michael J. Flannery
mflannery@cuneolaw.com
300 North Tucker Boulevard
St. Louis, MO  63101
Telephone:  314.226.1015
Facsimile:  202.789.1819

**AUDET & PARTNERS, LLP**
Michael McShane, Esq.
mmcshane@audetlaw.com
221 Main Street, Suite 1460
San Francisco, California 94105
Telephone:  415.568.2555
Facsimile:  415.576-1776

**WHITFIELD BRYSON & MASON LLP**
Gary Mason
gmason@masonlawdc.com
1625 Massachusetts Ave. NW
Suite 605
Washington, D.C. 20036
Telephone: 202. 429.2290
Facsimile: 202.429.2294

LOCKRIDGE GRINDAL NAUEN PLLP
Robert K. Shelquist
rshelquist@locklaw.com
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of October, 2013, I electronically filed and served the foregoing with the Clerk of the United States District Court for the District of Colorado through CM/ECF system to the parties listed on record.


*/s/ Heather Christman*
Heather Christman