IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-00685-RBJ

DAVID HELMER, FELICIA MUFTIC, MICHAEL MUFTIC, CRAIG KANIA, and OLIVER
MARTIN, on behalf of themselves and all others similarly situated,

> Plaintiffs,

v.

THE GOODYEAR TIRE & RUBBER CO., an Ohio corporation,

> Defendant.

---

## ORDER

---

Goodyear Tire & Rubber Company ("Goodyear") seeks summary judgment on three aspects of plaintiffs' products liability case. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

## I.   Factual Background

The Court's earlier order on class certification summarized almost all of the relevant factual details in this case. ECF No. 122. That order, which certified only the Colorado class for the purposes of determining liability for design defect, is incorporated by reference.

## II.   Discussion

### a.   Standard of Review

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A

1

fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

**b.  ECF No. 101 (Motion for Summary Judgment on All Claims by Plaintiffs Craig Kania and Oliver Martin).**

Goodyear argues that Wisconsin's six-year statute of limitations on non-contract actions bars the claims brought by Craig Kania and Oliver Martin ["the Wisconsin plaintiffs"].  Plaintiffs concede that the statute would bar their claims, but they argue that Goodyear misled them into believing their claims might be covered by the Entran II settlement and therefore equitable estoppel should toll their claims.  For the following reasons I conclude that, under Wisconsin law, equitable tolling would be inappropriate in this case.

Goodyear argues that Mr. Kania's and Mr. Martin's claims accrued in 2003 when their Entran 3 allegedly began leaking and the plaintiffs became aware of a possible defect.  Wis. Stat. § 893.52 ("An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed."); *Pritzlaff v. Archdiocese of Milwaukee*, 533 N.W.2d 780, 785-87 (Wis. 1995) (cause of action accrues when the claimant discovered that she had a claim to

enforce against an identified person).  Deposition testimony from both plaintiffs confirms the fact that they were aware of their potential claims in 2003 at the latest.  Because they filed suit in 2012, nine years after accrual, Goodyear contends that their claims are barred.

The Wisconsin plaintiffs do not dispute that their claims accrued in 2003.  Rather they suggest that they are entitled to equitable tolling due to misconduct by Goodyear.  In support of this argument, they note that Goodyear printed the same 1-800 number on both Entran II and Entran 3 hose.  Goodyear chose to make this number available for callers filing claims under the Entran II settlement.  Goodyear did not administer the phone number but merely made it available to the settlement coordinators.  In 2009, plaintiffs received a letter from the Entran II claims administrator (not Goodyear) indicating that they might have Entran II in their home, and it may have been covered by the settlement.  ECF No. 101, Ex. 5.  This letter also listed the identifying markers on the Entran II tubing.  *Id.*  The list does not include any markings such as "Entran 3."  The photo of the tubing removed from plaintiffs' homes, however, shows tubing marked "Entran 3."  ECF No. 105-3.  One of the plaintiffs, Mr. Kania, testified that in 2003 he was aware that he had Entran 3 tubing "based on the labeling on the hose."  ECF No. 101, Ex. 1, at 35:10-13.  Also in 2009, the plaintiffs filed a claim which was denied in January 2010 after an inspection revealed the hose was Entran 3 and not Entran II.

In light of the similarities between the two products and the absence of a specific disclaimer notifying callers that Entran 3 is a separate product not part of the settlement, it is understandable why the Wisconsin plaintiffs might have initially thought they could file a claim to receive funds from the Entran II settlement.  There is some dispute as to

whether the plaintiffs understood that Entran II and Entran 3 were separate products.  *See, e.g.*, Kania Dep., pp. 34:16-23; 48:17-49:2; 49:22-25; O. Martin Dep., p. 35:2-15.  This initial confusion, however, does not entitle these plaintiffs to equitable tolling.

> Estoppel applies to a statute of limitations defense where
>
> the conduct and representations of the party asserting the statute of limitations "were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *State ex rel. Susedik v. Knutson,* 52 Wis.2d 593, 598, 191 N.W.2d 23 (1971).  Actual fraud is not required to invoke equitable estoppel, but the party asserting the statute of limitations must have been guilty of fraudulent or inequitable conduct—distinct from the claimed fraud itself—that induced the other party to delay filing the action until it was too late.  *Id.*  The Claimant bears the burden of proof of estoppel by clear and convincing evidence, and the Court cannot rely on mere inference or conjecture.  *Gonzalez v. Teskey,* 160 Wis.2d 1, 13, 465 N.W.2d 525 (Ct.App.1990).

*In re Archdiocese of Milwaukee*, 490 B.R. 575, 579-80 (Bankr. E.D. Wis. 2013); *see also Williams v. Kaerek Builders, Inc.*, 568 N.W.2d 313, 318 (Wis. App. 1997).  "Additionally, '[t]o give rise to an estoppel by silence or inaction, there must be a right and an opportunity to speak and an obligation or duty to do so."  *Loertscher v. Uniroyal Goodrich Tire Co.*, 212 Wis. 2d 642 (Wis. Ct. App. 1997) (quoting *Mortgage Assocs., Inc. v. Monona Shores, Inc.,* 47 Wis.2d 171, 185 (1970)).  Estoppel by inaction or silence is less appropriate where plaintiffs "could have readily obtained [the relevant] information from other sources."  *Id.*

In this case, Goodyear made no affirmative statements about plaintiffs' situation.[1] Plaintiffs never communicated with Goodyear about their Entran hose.  *Cf. Rakowski v. Milwaukee Mut. Ins. Co.*, 203 Wis. 2d 271, at *2 (Wis. App. 1996) (citing *Susedik v. Knutson*, 191 N.W.2d 23, 24-26 (Wis. 1971)) (holding that "affirmative conduct of the defendant may be equivalent to a representation upon which the plaintiff may rely to his

---

[1] The plaintiffs appear to suggest a more active misrepresentation by Goodyear on the theory that Goodyear had already decided, years earlier, to stop manufacturing Entran 3 due to liability concerns. This line of argument, however, amounts to speculation that cannot serve as the basis for equitable tolling.

or her disadvantage"). Goodyear's sin—if it is guilty of one at all—is one of omission. Indeed the only "affirmative conduct" in which Goodyear engaged in relation to the Wisconsin plaintiffs' awareness of their claims was the act of making the phone number printed on both products available for use by the Entran II settlement administrators. By itself this conduct was not so unfair or misleading to trigger estoppel.

Plaintiffs' better argument is that given the fact that an Entran 3 owner might call the 1-800 number and become confused, Goodyear was under an obligation to act to correct that confusion. Yet even this argument fails under Wisconsin law. In *Loertscher*, the court explained that estoppel by inaction requires an obligation or duty to speak, especially where the plaintiff could obtain the needed information from other sources. Here, the Wisconsin plaintiffs have not identified Goodyear's duty to speak. Furthermore, the plaintiffs could have figured out that they were pursuing the wrong claims process had they examined the markings on their tubing and compared them to the information contained in the notice. In other words, they were given information by other sources that should have made it clear that they were ineligible for settlement out of the Entran II litigation. Equitable estoppel, therefore, is unavailable to these plaintiffs, and their claims are barred by Wisconsin's statute of limitations.

c. **ECF No. 107 (Motion for Partial Summary Judgment on Breach of Implied Warranty Claims Asserted by the Helmer and Muftic Plaintiffs).**

As its title indicates, this motion seeks summary judgment on the breach of implied warranty claims brought by the Helmer and Muftic plaintiffs. Those claims, however, were voluntarily dismissed by counsel at the class certification hearing on February 28, 2014.[2] The

---

[2] The relevant portion of the transcript follows:

Court relied on counsel's representation, and noted in its March 21, 2014 order certifying the class that "[a]t the hearing on class certification, plaintiffs abandoned all claims except strict liability for design defect." ECF No. 122 at 4. Apparently counsel for plaintiffs now contends that it did not intend to abandon these claims with respect to the named plaintiffs as individuals. That position is inconsistent with the position counsel took at the hearing. There was no hedging or equivocating or excepting at that time. All claims other than Claim One for design defect are therefore dismissed with prejudice, and Goodyear's motion for summary judgment on the implied warranty claims is denied as moot.

      **d.**  **<u>ECF No. 109 (Motion for Summary Judgment on All Claims by the Muftic Plaintiffs).</u>**

This motion seeks summary judgment on all of the claims brought by the Muftics on the grounds that the Muftics present no evidence that could possibly support a jury finding that a defective hose caused the leaks in the Muftic home. All they have, according to Goodyear, is the unsupported opinion of Dr. Moalli. Dr. Moalli never referenced the Muftic home in his reports beyond mentioning that it was one of the homes he visited. Because there is no evidence specifically related to the Muftic home, Goodyear concludes, no jury could ever find that the Muftic hose was defective. *Cf. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1060-61 (D. Colo. 2011) ("If summary judgment can be avoided merely by presenting the unsupported opinion of an expert

---

The Court: So are you willing to drop all the rest of your claims and just go with what your core case is?

Mr. Mason: We are, Your Honor, absolutely.

The Court: Good. That will take care of that.

Mr. Mason: Absolutely.

The Court: We've got a product-liability design-defect case now.

Mr. Mason: That's what we have . . . .

ECF No. 116 at 10-11.

witness, it would be virtually impossible for a court to grant summary judgment as long as the non-moving party could locate a sole expert who was willing to create a genuine issue of material fact for a price.").

Frankly, this motion reads like a closing argument. Goodyear fails to cite any cases holding that summary judgment is appropriate in a design defect case where a plaintiff lacks physical evidence but offers the testimony of an expert who visited the relevant sites and concluded that the product was defectively designed. Goodyear's best argument—as this Court understands it—is that no one will ever know, definitively, the cause of the leak in the Muftic's home because the damaged hose was discarded, and all we are left with is speculation.

It might be true that no one will ever know exactly why the hose leaked in the Muftic home. But that would seem to be an issue for the individual damage trials that would take place after resolution of the design defect question. Furthermore, Dr. Moalli's opinion in this case is not "unsupported" as the term was used in *Squires*. In that case, the court explained that conclusory expert opinions would not defeat a motion for summary judgment, and it even went so far as to exclude the proffered expert opinion under FRE 702. In this case, by contrast, Dr. Moalli's testimony has already been determined to possess sufficient support to allow plaintiffs to demonstrate predominance and superiority during the class certification stage. Goodyear's arguments on this point go squarely to the weight of the evidence, and a jury could reasonably infer causation. *See, e.g.*, *Truck Ins. Exch. V. MagneTek, Inc.*, 360 F.3d 1206, 1215 (10th Cir. 2004) ("[W]e do not disagree with that general proposition" that "circumstantial evidence may be used to prove causation."); *Bartholic v. Scripto-Tokai Corp.*, 140 F. Supp. 2d 1098,

1113 (D. Colo. 2000) ("Circumstantial evidence is an acknowledged basis for showing causation.  Therefore, only in instances where the facts allow reasonable minds to draw but one inference should causation be decided by the court as a matter of law.").

**III.    Conclusion**

Therefore Goodyear's motions are resolved as follows:

1.  ECF No. 101 is GRANTED.

2.  ECF No. 107 is DENIED as moot.

3.  ECF No. 109 is DENIED.

DATED this 9th day of July, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge